IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ERROL FULFORD-EL,

    Plaintiff,

v.                                        CIVIL NO.: WDQ-10-0618

GARY D. MAYNARD, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Errol Fulford-El sued Gary D. Maynard, Secretary of the Department of Public Safety and Correctional Services (the "DPSCS"); and J. Michael Stouffer, Commissioner of Correction (collectively, the "defendants") under 42 U.S.C. § 1983 for due process violations.[1] For the following reasons, the defendants' motion to dismiss will be granted.

I.     Background[2]

Fulford-El is a North Branch Correctional Institution inmate. ECF No. 21 at 1. In March 2007, he was placed on disciplinary segregation in the Division of Correction (the "DOC"). *Id.*, Ex. 1 at 5–6. At that time, Fulford-El had been assigned a commitment number ("Commitment Number One"). *Id.* at 3. Fulford-El's disciplinary segregation was to run until July 7, 2012; however, on June 1, 2007, Fulford-El was mandatorily released from the DOC and paroled. *Id.* at 3, 5–6.

---

[1] No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010).

[2] For the motion to dismiss, the well-pled allegations in Fulford-El's complaint are accepted as true. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

On January 23, 2008, Fulford-El was arrested on various charges in connection with an armed robbery. *Id.* at 4; ECF No. 21, Ex. 2. On February 28, 2008, the Maryland Parole Commission issued a warrant for his arrest and detention. ECF No. 21, Ex. 1 at 3. On March 14, 2008, Fulford-El was returned to the DOC and his outstanding disciplinary segregation terms were reinstated. ECF No. 21 at 3.[3] While detained, he violated several institutional rules and received additional disciplinary segregation. *Id.*; *see generally id.*, Ex. 3. During the accompanying disciplinary proceedings, Fulford-El was given notice of the charges, the opportunity to testify and call witnesses, and reasons for the hearing officers' decisions. *See* ECF No. 21 at 12–13; *see generally id.*, Ex. 3.

On September 2, 2008, Fulford-El entered an *Alford* plea[4] for accessory after the fact in connection with the armed robbery charges. *See* ECF No. 21, Ex. 2 at 7. On October 21, 2008, he was sentenced to five years imprisonment "concurrent with any other outstanding or unserved sentence[, beginning] January 23, 2008." *See id.* at 1–2. On October 23, 2008, the Department of Parole and Probation closed Fulford-El's case and noted to "withdraw [the] warrant." ECF No. 21, Ex. 1 at 2.

On October 31, 2008, the DOC closed Fulford-El's Commitment Number One and opened Commitment Number Two. ECF No. 21, Ex. 3 at 7. Fulford-El's outstanding disciplinary segregation terms were transferred to Commitment Number Two. *Id.* Under his new commitment number, Fulford-El was found guilty of violating institutional rules. *See generally* ECF No. 21,

---

[3] A DOC Directive provides that when "an inmate serving disciplinary segregation is transferred to . . . custody outside the [DOC], the balance of the said segregation to be served at the time of transfer shall resume upon the inmate's return to a [DOC] facility." ECF No. 21, Ex. 8 at 2.

[4] A plea in which the defendant consents to a prison sentence "even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

Ex. 3. As with the previous violations, Fulford-El was provided notice, the chance to testify and call witnesses, and reasons for the hearing officers' decisions. *See* ECF No. 21 at 12–13; *see generally id.*, Ex. 3.

On March 12, 2009, Fulford-El joined the Behavior Management Program (the "BMP"), and remains in the program. ECF No. 21, Ex. 1 at 25–26.[5] Assignment to the BMP stays disciplinary segregation. ECF No. 21, Ex. 4 at 7.[6] On March 30, 2010, Fulford-El's outstanding disciplinary segregation terms were suspended. ECF No. 21, Ex. 1 at 40.

On July 6, 2010, Fulford-El violated an institutional rule and was assessed 90 days disciplinary segregation. *See* ECF No. 21, Ex. 5 at 2. He received notice, the opportunity to testify and call witnesses, and reasons for this decision. *See* ECF No. 21 at 12–13; *see generally id.*, Ex. 3.

On October 25, 2010, Paul O'Flaherty, Assistant Commissioner of Correction, ordered that any disciplinary segregation applied from Commitment Number One to Two be vacated because of Fulford-El's BMP participation. ECF No. 21, Ex. 5 at 1. This order vacated 881 days of disciplinary segregation. *Id.* at 2. On October 28, 2010, the DPSCS noted that if Fulford-El were to be removed from the BMP, only the 90 days of disciplinary segregation stemming from the July 6, 2010 rule violation would be reinstated. *Id.*

On March 11, 2010, Fulford-El filed a pro se complaint against the defendants under 28 U.S.C. § 1983 for due process violations. *See* Compl. 8.[7] On November 1, 2010, the defendants

---

[5] From September 24, 2009 to March 24, 2010, Fulford-El was returned to disciplinary segregation because of inappropriate behavior. *See* ECF No. 21, Ex. 1 at 43.

[6] If an inmate leaves the BMP early, the Warden has discretion whether to credit time spent in the program toward disciplinary segregation. ECF No. 21, Ex. 4 at 7. Upon completion of the BMP, a discharge plan is created to return the inmate to the least restrictive environment consistent with institutional safety and security. ECF No. 21 at 4; *see* ECF No. 21, Ex. 4 at 7–9.

[7] Although Fulford-El used a standard habeas corpus petition form, he "seek[s] damages [under §] 1983." Compl. 8.

3

moved to dismiss or for summary judgment. ECF No. 21. On January 24, 2011, Fulford-El opposed that motion. ECF No. 28.[8]

II. Analysis

A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325–26 (4th Cir. 2001).

Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764–65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with' a defendant's liability"; the facts as pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must

---

[8] That day, Fulford-El also filed a "motion to respond with affidavit of truth to declare the truth," which asserts that "[the] defendants are not entitled to judgment in their favor." ECF No. 27 at 1. This document will be construed as additional support for Fulford-El's opposition and denied as moot.

4

not only allege but also "show" the plaintiff is entitled to relief. *Id.* at 1950 (*quoting* Fed. R. Civ. P. 8(a)(2)).

"[W]he[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not show[n]--that the pleader is entitled to relief." *Id.* (citation and internal quotation marks omitted).

The Court "should view the complaint in a light most favorable to the plaintiff," and "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations that are mere[] conclus[ions], unwarranted deductions of fact, or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citation and internal quotation marks omitted).

B. The Defendants' Motion

Fulford-El asserts that he was entitled to "due process [and] a hearing" when his disciplinary segregation terms accrued under Commitment Number One were transferred to Two. Compl. 8–9. He also asserts that he was forced to serve disciplinary segregation under DOC Directives that are invalid under the Maryland Administrative Procedure Act. *Id.*; ECF No. 27 at 1; ECF No. 28 at 1.[9] Fulford-El seeks "[r]elease from disciplinary segregation" and unspecified damages under § 1983. Compl. 8.

In moving to dismiss or for summary judgment, the defendants argue that Fulford-El's request for injunctive relief is moot, and they did not violate his due process rights. ECF No. 21

---

[9] Fulford-El cites Directives 105-4 (outlining inmate pre-hearing procedures) and 105-5 (listing rule violations). Compl. 8. In 2005, the Maryland Court of Appeals found these directives invalid because they had not been adopted in conformance with the Maryland Administrative Procedure Act. *Massey v. Secretary*, 389 Md. 496, 525, 886 A.2d 585, 602 (2005); Md. Code Ann., State Gov't §§ 10-101 *et seq.*

at 8–14.

   1. Mootness

Courts may decide legal disputes only in the context of actual cases or controversies. *See Alvarez v. Smith*, 130 S. Ct. 576, 578, 580 (2009). If an intervening event resolves the dispute, no controversy exists and the claim must be dismissed as moot. *Id.* at 580. Because Fulford-El is participating in the BMP, he is not serving disciplinary segregation. ECF No. 21, Ex. 1 at 25–26.[10] Thus, his request to be released from such segregation is moot.

   2. Due Process

The Fourteenth Amendment due process clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." A liberty due process claim must identify a protected liberty interest. *See Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Henderson v. Simms*, 223 F.3d 267, 274 (4th Cir. 2000). A plaintiff may bring a civil action to redress due process violations under 42 U.S.C. § 1983.

When a protected liberty interest is implicated in the context of a prison disciplinary proceeding, procedural due process requires written notice of the charges, a hearing with the right to call witnesses, and a written decision. *Baxter v. Palmigiano*, 425 U.S. 308, 320–21 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 564–65 (1974). Substantive due process requires the fact-finder to base his decision on "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).

A violation of state laws, policies, or procedures does not constitute a federal due process claim. *See Riccio v. Cnty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990); *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 392 (4th Cir. 1990). A prison rule implicates a liberty interest only if

---

[10] If Fulford-El is removed from the BMP, only the 90-day disciplinary segregation imposed because of his July 6, 2010 rule violation will be reinstated. ECF No. 21, Ex. 5 at 2.

it creates an enforceable expectation that the State will provide a certain procedure or outcome regarding the inmate's confinement conditions. *See Sandin v. Conner*, 515 U.S. 472, 481–84 (1995).

Although Fulford-El asserts that he was entitled to "due process [and] a hearing" when his outstanding disciplinary segregation terms were transferred to Commitment Number Two, Compl. 8–9, no DOC policy, statute, regulation, or directive mandates due process or a hearing in that situation, ECF No. 21 at 12. Thus, Fulford-El has not identified an enforceable expectation that the DOC would afford him such rights. *See Henderson*, 223 F.3d at 274; *Sandin*, 515 U.S. at 481–84. Further, under Md. Code Ann., Corr. Servs. § 3-701(2), a "term of confinement" is "the period from the first day of the sentence that begins first through the last day of the sentence that ends last . . . for . . . concurrent sentences." On October 21, 2008, Fulford-El was sentenced to five years "concurrent with any other outstanding or unserved sentence[, beginning] January 23, 2008." *See* ECF No. 21, Ex. 2 at 1–2. Thus, Fulford-El's concurrent sentences allowed the DOC to transfer the disciplinary segregation terms accrued under Commitment Number One to Two.[11]

Further, if Fulford-El is challenging the protections he received after violating prison rules, he was afforded procedural and substantive due process for every disciplinary proceeding on the violations. He was given notice of the charges, a hearing, and the opportunity to testify and call witnesses. ECF No. 21 at 12–13; *see generally* ECF No. 21, Ex. 3; *Baxter*, 425 U.S. at 320–21; *Wolff*, 418 U.S. at 564–65. Hearing officers based their decisions on "some evidence" by providing reasons for their findings. *See generally* ECF No. 21, Ex. 3; *Hill*, 472 U.S. at 455.

---

[11] ECF No. 21, Ex. 1 at 6; *see also* ECF No. 21, Ex. 8 at 2 (DOC Directive noting that when an inmate serving disciplinary segregation is transferred, the balance of that segregation "shall resume" when he returns).

Fulford-El's assertions that he served disciplinary segregation under DOC Directives that are invalid under the Maryland Administrative Procedure Act are unavailing. *See* Compl. 8–9; ECF No. 27 at 1; ECF No. 28 at 1. Violations of state law do not provide a basis for federal relief. *See Riccio*, 907 F.2d at 1469; *Weller*, 901 F.2d at 392.

Thus, because Fulford-El has failed to state a due process claim, the defendants' motion to dismiss must be granted.[12]

III. Conclusion

For the reasons stated above, the defendants' motion to dismiss will be granted.

6/29/11
Date

William D. Quarles, Jr.
United States District Judge

---

[12] If Fulford-El seeks to impose § 1983 supervisory liability on the defendants, he must establish that their subordinates "engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). As discussed in Part II.B.2, however, Fulford-El has failed to state a constitutional violation.